# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| WILLIAM EARL HOLLOMON, | : |
| Plaintiff, | : |
| VS. | : |
| | : **7 : 09-CV-109 (HL)** |
| Head Nurse SHIRLEY LEWIS, | : |
| Asst. Nurse LOUISE WHITE, | : |
| Lt. MARK ELKINS, and | : |
| Ssgt. RICHARD SWAIN, | : |
| Defendants. | : |

## RECOMMENDATION

The Plaintiff filed this action in September 2009, raising claims of deliberate indifference to serious medical needs. (Doc. 2). Presently pending herein is a Motion for Summary Judgment filed on behalf of Defendants Shirley Lewis and Louise White. (Doc. 27). The Court notified the Plaintiff of the filing of Defendants Lewis and White's motion, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's order. (Doc. 30). The Plaintiff has filed responses to the Defendants' Motion for Summary Judgment.

### Background

The Plaintiff filed this action on September 2, 2009, raising in part allegations of deliberate indifference to serious medical needs by Defendant Shirley Lewis, a registered nurse providing nursing care to inmates housed at the Lowndes County Jail, and Defendant Louise White, a licensed practical nurse also providing nursing care at the Lowndes County Jail. According to Plaintiff's Complaint, while confined at the Lowndes County Jail on May 14, 2008, Plaintiff slipped and fell in his cell, injuring his right hand. Plaintiff alleges that as a result of his fall, he suffered a fracture of

his right hand, the dislocation of several knuckles, and the turning of his little finger "completely sideways". (Doc. 2).

Plaintiff asserts that he has failed to receive proper medical care for these injuries, both at the time of the accident and subsequently. Specifically, the Plaintiff alleges that he was taken to the Medical Department immediately after the fall, and that Nurse White examined his finger, consulted with Nurse Lewis, and provided Plaintiff with ice and gauze for his hand. However, Plaintiff asserts that Defendants White and Lewis refused to send him to the hospital and refused to order an x-ray of his hand, delaying the actual x-ray until two days later, on May 16, 2008. Plaintiff was ultimately informed that the x-ray results showed no fracture to his hand, and Plaintiff acknowledges that his hand is now healed. However, Plaintiff asserts that as a result of the improper medical care delivered by Nurses Lewis and White, his hand is "extremely askew and disfigured." (Doc. 6, p. 3).

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

As the party moving for summary judgment, the Defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477

2

U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, including pleadings, discovery materials, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it". Fed.R.Civ.P. 56(e)(3).

## Discussion

In their Motion for Summary Judgment, Defendants Lewis and White argue that there is no evidence of deliberate indifference to Plaintiff's serious medical condition and that Plaintiff did in fact receive medical attention for his hand injury. In asserting that they are entitled to the entry of summary judgment, Defendants Lewis and White rely on their affidavits and the medical records of the Plaintiff.

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal citations omitted). "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255

(11th Cir. 1999).

Defendants Lewis and White have established through their affidavits, as well as by reference to the Plaintiff's medical records, that the Plaintiff received medical care for his hand injury and that neither Defendant Lewis nor Defendant White denied Plaintiff medical care for any alleged injuries or conditions about which they had knowledge during the time period in question. (Doc. 28, Exhs. A and B). Nurse White testifies that she saw the Plaintiff at noon on May 14, 2008, the day of his alleged fall, and Plaintiff complained to Nurse White at that time about an injury to his right hand. (Doc. 28, Exh. A, ¶ 9). Nurse White examined the Plaintiff's right hand and observed that his "pinky was a bit swollen". *Id.* at ¶ 10. Based on her examination of the Plaintiff's hand, Nurse White recommended to the jail physician that an x-ray be taken of the hand, and she provided Plaintiff with an ice pack and bandage. *Id.* Nurse White testifies that as a nurse at the jail facility, she was not authorized to order an x-ray. *Id.* at ¶ 12. As an inmate housed in the isolation-segregation unit of the Lowndes County Jail at the time of the incident, the Plaintiff was observed by medical staff at least twice a day to ensure that he was "not suffering from any medical problems." *Id.* at ¶ 6. When observed by medical staff later in the day on May 14, 2008, the Plaintiff did not appear to be in any distress, and he voiced no complaints the following day. *Id.* at ¶ 11.

Plaintiff underwent an x-ray of his right hand on May 16, 2008, the results of which were interpreted by a radiologist on May 17, 2008 and according to Nurses White and Lewis, showed that Plaintiff had not broken his right hand. *Id.* at ¶¶ 13, 14; Doc. 28, Exh. B, ¶ 12. The x-ray did reveal a "transverse fracture of the midshaft right fifth metacarpal with overlying callus" that was "healing" and a "healed trauma involving the right fourth metacarpal". (Doc. 28, Exh. 1, radiology report). However, it is not clear from the medical records whether the "healing" fracture was from the Plaintiff's fall two days before or was pre-existing. Nurse White further testifies that "[e]ven if

4

Plaintiff had broken his hand, it would be very unlikely that the physician would have ordered a cast for Plaintiff's hand, since most broken bones in the hand simply need to heal on their own without a cast." (Doc. 28, Exh. A, ¶ 15). According to the affidavit testimony of Defendants White and Lewis, the x-ray results were communicated to the Plaintiff shortly after the medical staff received them.

In early June 2008 the Plaintiff complained of pain in his hand and asserted that he had not been informed of the x-ray results. *Id.* at ¶ 17. Plaintiff was again informed that the x-ray showed no fracture and he was prescribed 600 mg of Advil for fourteen days. *Id.* Plaintiff refused the Advil on June 7, 8, 14, 15, and 19, 2008. *Id.* at ¶ 18.

In her affidavit, Nurse Lewis also testifies as to the treatment provided to the Plaintiff by Nurse White and the medical staff, and Nurse Lewis reiterates that only a physician can order said x-ray for an inmate at the Lowndes County Jail. (Doc. 28, Exh. B, ¶ 11).

Thus, Defendants Lewis and White have established that medical examination and attention were provided to the Plaintiff when the Plaintiff appeared to have or presented with an alleged medical need. Defendants Lewis and White thus met their burden to establish the absence of a genuine issue of material fact regarding the care provided for the Plaintiff following his fall and hand injury on May 14, 2008. The burden now shifts to the Plaintiff to rebut the Defendants' summary judgment showing. *Celotex*, 477 U.S. at 324.

The Plaintiff has submitted responses to the Defendants' Motion for Summary Judgment, although none of these responses are in the form of affidavits or sworn testimony. (Docs. 32, 35, 35-1). Plaintiff maintains that he was not provided any pain medication following the injury to his right hand and that he was not told of the x-ray results until June 4, 2008. Plaintiff further asserts that even if nurses at the Lowndes County Jail could not order an x-ray, the nurses could have sent

Plaintiff to the hospital for treatment of his hand.  Plaintiff maintains that he should have been sent to the hospital to have an x-ray of his hand and to have the bones in his hand properly re-set.  The Plaintiff also points out that the radiologist's report showed a healed right fourth metacarpal, as well as a "[h]ealing transverse fracture of the midshaft right fifth metacarpal with overlying callus." (Doc. 34, Exh. 1, radiology report).

The Court notes that, contrary to the sworn testimony of Nurse Lewis and Nurse White, the radiology report does not indicate that Plaintiff "previously fractured" his fifth metacarpal nor that such fracture was "healed".  Instead, the radiology report does not indicate when the fracture arose, and only indicates that it is "healing".  While it is not clear from the evidence if Plaintiff's fifth metacarpal was fractured as a result of the subject fall, that issue is not dispositive of the question of deliberate indifference.

Viewing the facts and reasonable inferences therefrom in the light most favorable to the Plaintiff as the non-moving party, the Plaintiff has failed to overcome Defendants Lewis and White's summary judgment showing that these Defendants did not act with deliberate indifference to any serious medical condition suffered by the Plaintiff.  The Plaintiff thus has failed to rebut the evidence that he received medical treatment for his hand injury on May 14, 2008 and thereafter.  *See* Fed.R.Civ.P. 56(e).

To the extent that the Plaintiff disagrees with the course of treatment provided by Defendants Lewis and White, such disagreement over the proper course of medical treatment will not support a claim of deliberate indifference.  Plaintiff's assertion that his x-ray results showed a healing fracture of the right fifth metacarpal is supported by his medical records.  However, it is unclear whether this fracture of Plaintiff's right fifth metacarpal as identified in the x-ray of Plaintiff's right hand resulted from Plaintiff's May 14 2008 fall or a prior injury to the hand, and Plaintiff has failed to

show that any failure to correctly diagnose this fracture or delay in treating same amounted to deliberate indifference by Nurses White and Lewis. "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted).

Furthermore, the Plaintiff has failed to establish that any delay in treating his hand injury, or delay in communicating the results of his x-ray, exacerbated the condition. "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." *Hill v. DeKalb RYDC*, 40 F.3d 1176, 1189 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730 (2002). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.* at 1188. Plaintiff's conclusory allegations of disfigurement of his right hand are not enough to establish a constitutional violation as the result of delay in treatment.

"Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency', thereby rising to the level of a constitutional tort. The known risk of injury must be 'a strong likelihood, rather than a mere possibility'". *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (quoting *Estelle* , 429 U.S. 97, and *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)). The Plaintiff has failed to rebut Defendants Lewis and White's testimony and the evidence of record, including Plaintiff's medical records, establishing that the Plaintiff was provided with medical attention and treatment following

the injury to his hand. Furthermore, Plaintiff has failed to establish that any delay in treatment resulted in a worsening of his condition.

The Court notes that in a document filed with the Court on January 22, 2010, the Plaintiff raises additional allegations of deliberate indifference, asserting that the Defendants failed to properly treat his flu symptoms in December 2009. (Doc. 20). In their Motion for Summary Judgment, the Defendants address these allegations. However, the Plaintiff did not seek to formally amend his Complaint to include these additional allegations, does not discuss amending his claims in the January 22, 2010 document, and does not seek additional recovery based thereon. Thus, the Plaintiff's additional allegations in his January 22, 2010 filing are not claims which are properly before the Court in this action.

## Conclusion

Based on the Plaintiff's failure to overcome Defendants Lewis and White's summary judgment showing that Plaintiff was provided with medical attention for his injuries, and based on Plaintiff's failure to establish the exacerbating effect of any delay in treatment, it is the recommendation of the undersigned that Defendants Lewis and White's Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this recommendation.

**SO RECOMMENDED**, this 9th day of February, 2011.

*s/ THOMAS Q. LANGSTAFF*
**UNITED STATES MAGISTRATE JUDGE**

asb